**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHARON ALBANO, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMTRUST FINANCIAL SERVICES, INC., BARRY D. ZYSKIND, RONALD E. PIPOLY, JR., DONALD T. DECARLO, SUSAN C. FISCH, ABRAHAM GULKOWITZ, GEORGE KARFUNKEL, and JAY J. MILLER, <br><br> Defendants. | Civil Action: <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Sharon Albano ("Plaintiff"), by and through her attorneys, alleges upon personal knowledge as to herself, and upon information and belief as to all other matters, based upon the investigation conducted by and through her attorneys, which included, among other things, a review of documents filed by Defendants (defined below) with the United States Securities and Exchange Commission (the "SEC"), conference call transcripts, news reports, press releases issued by Defendants, and other publicly available documents, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      This is a securities class action pursuant to Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), against: (a) AmTrust Financial Services, Inc. ("AmTrust"); and (b) AmTrust's top officers and directors, who were the signatories to the Registration Statements at issue in this action, namely Barry D. Zyskind, Ronald E. Pipoly, Jr., Donald T. Decarlo, Susan C. Fisch, Abraham Gulkowitz, George Karfunkel, and Jay J. Miller (the "Individual Defendants").

This action is brought on behalf of purchasers of AmTrust common stock in a November 12, 2015 Offering (the "Offering").

2.      AmTrust is a multinational insurance holding company headquartered in New York City. It offers specialty property and casualty insurance products, including workers' compensation, commercial automobile, general liability and extended service and warranty coverage through its primary insurance subsidiaries.

3.      The Offering Registration Statement and Prospectus (as defined below) incorporated financial reports issued in 2014 and parts of 2015, but these were materially false and misleading due to substantially identical misapplications of Generally Accepted Accounting Principles ("GAAP"). As AmTrust reported in early 2017, certain restatements needed to be made to fairly set forth its financial results, and previous statements could no longer be relied upon. AmTrust filed a Form 10-K with the SEC on April 4, 2017, which contained the accounting restatements, described as follows:

> [T]he restatements primarily involve the timing of recognition of revenue in the Company's service and fee business. The total impact of the restatements to net income attributable to common stockholders in 2014 and 2015 ***was a decline of 7.2% and 11.2%***, respectively [Emphasis added].

4.      It was further reported that the Company had been operating during this period with material weaknesses in its financial reporting, while having represented that no such material weaknesses existed. This adverse news was disclosed piecemeal beginning in February 2017 and culminating in April 2017. Each material adverse announcement led to a substantial decline in the price of AmTrust stock. The principal accounting misstatements primarily involved recognition of warranty income, and accrual for compensation. The proper methods of accounting for these items are matters of fact, and not opinion. Under the Securities Act, the issuer (AmTrust) is strictly

liable for any harm caused by these materially false and misleading statements; the director defendants are *prima facie* liable for them as well. No defendant herein is charged with fraud, as all claims sound in either negligence or strict liability.

5. The adverse disclosures commenced on February 27, 2017, when AmTrust announced premarket that it would delay the filing of its full year 2016 financial results as the Company's management had "identified material weaknesses in its internal control over financial reporting that existed as of December 31, 2016, specifically related to ineffective assessment of the risks associated with the financial reporting, and an insufficient complement of corporate accounting and corporate financial reporting resources within the organization."

6. The Company further disclosed that it would correct certain previously issued financial statements for "fiscal years ended December 31, 2015 and 2014 and certain financial information for fiscal years ended December 31, 2013 and 2012," and that it believed these corrections to be "immaterial." On this news, AmTrust's share price fell nearly 20% to close at $22.34 on February 27, 2017. Shortly thereafter, it would be revealed that the "corrections" were more than "immaterial", but rather the Company's financial statements for the period 2014 through 2016 were materially untrue.

7. On March 16, 2017, after the markets had closed, AmTrust announced that its Board of Directors (the "Board") had determined that the Company's "previously issued consolidated financial statements for 2014 and 2015 (including for each of the four quarters of 2015) as well as for the first three quarters of 2016 should be restated and should no longer be relied upon." The Company further disclosed that "earnings and press releases and similar communications, to the extent that they relate to the periods covered by these financial statements,

as well as the Company's fourth quarter and fiscal 2016 earnings release dated February 27, 2017, should no longer be relied upon."

8.      AmTrust reported that the "errors relate to: (1) upfront recognition of a portion of warranty contract revenue associated with administration services, based on the interpretation of ASC 605, Revenue Recognition, used in the previously filed financial statements related to multiple-element revenue recognition, instead of deferring recognition of the revenue over the life of the contract; and (2) bonuses that were expensed in the year paid but that should have been accrued in the year earned based on ASC 710, Compensation, and ASC 270, Interim Reporting."

9.      On this news, AmTrust's share price fell nearly 19% to close at $17.58 on March 17, 2017.  AmTrust stock closed at $16.40 per share on April 27, 2017.

10.      Accordingly, Plaintiff brings class action claims for liability related to misstatements made in connection with the November 2015 Secondary Offering.

## JURISDICTION AND VENUE

11.      The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C. §§ 77k and 77(o)).

12.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v.

13.      Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act, 15 U.S.C. §77v(a) because the Company is headquartered in New York and certain of the acts alleged in this Complaint occurred in here.

14.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

4

including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

15.    ***Plaintiff Sharon Albano*** ("Plaintiff") acquired shares in the Company's Secondary Common Stock Offering pursuant to a Prospectus update dated November 10, 2015,  and filed pursuant to Rule 424(b)(2) amending the Company's Shelf Registration filed on form S-3ASR June 11, 2015 at $64.00 per share, pre-split for a total purchase of $25,600.00.  The Company sold 5,000,000 shares in the Offering.   Plaintiff sold these shares on March 9, 2017, for total proceeds of $17,208.00.

16.    ***Defendant AmTrust Financial Services, Inc.*** ("AmTrust") is a Delaware corporation with its principal place executive offices located at 59 Maiden Lane, 43rd Floor, New York, New York.   AmTrust, through its subsidiaries, underwrites and provides property and casualty insurance products, including workers' compensation, commercial automobile, general liability and extended service and warranty coverage, in the United States and internationally to niche customer groups that we believe are generally under-served within the broader insurance market.  The Company trades on the NASDAQ stock exchange under the ticker symbol "AFSI."

17.    ***Defendant Barry D. Zyskind*** ("Zyskind") has served, at all relevant times, as AmTrust's Chairman of the Board, President and Chief Executive Officer ("CEO").  Zyskind was a signatory on the Registration Statement for the November 2015 Secondary Offering.

18.    ***Defendant Ronald E. Pipoly Jr.*** ("Pipoly") has served, at all relevant times, as AmTrust's Chief Financial Officer ("CFO") and Executive Vice President.  Zyskind was a signatory of the Registration Statement for the November 2015 Secondary Offering.

19.     *Defendant Donald T. DeCarlo* ("DeCarlo") was a director of the Company at the time of the Offering and signed the Registration Statement for the November 2015 Secondary Offering.

20.     *Defendant Susan C. Fisch* ("Fisch") was a director of the Company at the time of the Offering and signed the Registration Statement for the November 2015 Secondary Offering.

21.     *Defendant Abraham Gulkowitz* ("Gulkowitz") was a director of the Company at the time of the Offering and signed the Registration Statement for the November 2015 Secondary Offering.

22.     *Defendant George Karfunkel* ("Karfunkel") was a director of the Company at the time of the Offering and signed the Registration Statement for the November 2015 Secondary Offering.

23.     *Defendant Jay J. Miller* ("Miller") was a director of the Company at the time of the Offering and signed the Registration Statement for the November 2015 Secondary Offering.

## SUBSTANTIVE ALLEGATIONS

**A.     The November 2015 Secondary Common Stock Offering**

24.     The Prospectus Supplement was dated as of November 10, 2015 on its cover page, and filed November 12, 2015, making the offering effective as of that date with shares to be delivered on or about November 16, 2015 (the "Offering").  The Offering was for 5,000,000 shares priced at $64.00, for proceeds of $320,000,000.

25.     The Prospectus Supplement at p. S-25, specifically incorporated by reference the Company's SEC reports as follows:

> We incorporate by reference the information contained in the documents listed below (other than information that is deemed not to be filed):
>
> • Annual Report on Form 10-K for the year ended December 31, 2014,

6

filed      with      the      SEC      on      March      2,      2015;

• Quarterly Reports on Form 10-Q for the quarters ended March 31, 2015, June 30, 2015 and September 30, 2015, filed with the SEC on May 11, 2015, August 10, 2015 and November 9, 2015, respectively;

• Definitive Proxy Statement on Form DEF 14A filed with the SEC on March 31, 2015 (only those portions incorporated by reference in the Annual Report on Form 10-K for the year ended December 31, 2014); and

• Current Reports on Form 8-K filed with the SEC on February 27, 2015, March 19, 2015, April 13, 2015, May 21, 2015, June 18, 2015, September 10, 2015 and September 16, 2015.

26.    In addition, the Prospectus included detailed Company financial data for 2014 and 2015 on pp. S-8 to S-10.

27.    In the Company's Annual Report on Form 10-K for the year ending December 31, 2014, the Company reported, *inter alia,* net income of $446,598.000.  In addition, the Annual Report presented a comprehensive set of financial statements purportedly prepared pursuant to GAAP.  As set forth on p. F-10, the Company prepared the Company's consolidated financial statements, stating:

> *Basis of Reporting* — The consolidated financial statements of the Company have been prepared in conformity with accounting principles generally accepted in the United States of America.  The consolidated financial statements include the accounts of the Company and its domestic and foreign subsidiaries.

28.    The Company's Quarterly Report on form 10-Q for the first quarter of 2015 ("Q1 2015 Form 10-Q") was issued May 11, 2015.  In the Q1 2015 Form 10-Q, the Company reported net income of $164,148,000 and set forth its balance sheet, income statement and cash flow statement among other information.  The Q1 2015 Form 10-Q also represented at p. 8 that:

> The accompanying unaudited interim consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("GAAP") for interim financial statements and with the instructions to Form 10Q and Article 10 of Regulation SX and, therefore,

do not include all of the information and footnotes required by GAAP for complete financial statements. These interim statements should be read in conjunction with the financial statements and notes thereto included in the AmTrust Financial Services, Inc. ("AmTrust" or the "Company") Annual Report on Form 10K for the year ended December 31, 2014, previously filed with the Securities and Exchange Commission ("SEC") on March 2, 2015. The balance sheet at December 31, 2014 has been derived from the audited consolidated financial statements at that date but does not include all of the information and footnotes required by GAAP for complete financial statements.

These interim consolidated financial statements reflect all adjustments that are, in the opinion of management, necessary for a fair presentation of the results for the interim period and all such adjustments are of a normal recurring nature. The results of operations for the interim period are not necessarily indicative, if annualized, of those to be expected for the full year. The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. Actual results could differ from those estimates.

29.     The Q1 2015 Form 10-Q also reported at p. 67:

Our management, with the participation and under the supervision of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective in ensuring that information required to be disclosed by us in the reports we file of submit under the Exchange Act is timely recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.

During the most recent fiscal quarter, there have been no changes in our internal controls over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

30.     The Company's Quarterly Report on form 10-Q for the second quarter of 2015 ("Q2 2015 Form 10-Q") was issued August 10, 2015. The Company reported net income of

8

$80,733,000 and set forth its balance sheet, income statement and cash flow statement among other information.  The Q2 2015 Form 10-Q also represented at p. 9 that:

> The accompanying unaudited interim consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("GAAP") for interim financial statements and with the instructions to Form 10Q and Article 10 of Regulation SX and, therefore, do not include all of the information and footnotes required by GAAP for complete financial statements.  These interim statements should be read in conjunction with the financial statements and notes thereto included in the AmTrust Financial Services, Inc. ("AmTrust" or the "Company") Annual Report on Form 10K for the year ended December 31, 2014, previously filed with the Securities and Exchange Commission ("SEC") on March 2, 2015.  The balance sheet at December 31, 2014 has been derived from the audited consolidated financial statements at that date but does not include all of the information and footnotes required by GAAP for complete financial statements.
>
> These interim consolidated financial statements reflect all adjustments that are, in the opinion of management, necessary for a fair presentation of the results for the interim period and all such adjustments are of a normal recurring nature.  The results of operations for the interim period are not necessarily indicative, if annualized, of those to be expected for the full year. The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. Actual results could differ from those estimates.

31.     The Q2 2015 Form 10-Q also reported at p. 77:

> Our management, with the participation and under the supervision of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a15(e) and 15d15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective in ensuring that information required to be disclosed by us in the reports we file of submit under the Exchange Act is timely recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.

During the most recent fiscal quarter, there have been no changes in our internal controls over financial reporting (as defined in Exchange Act Rule 13a15(f) and 15d15(f)) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

32. The Company's Quarterly Report on form 10-Q for the third quarter of 2015 ("Q3 2015 Form 10-Q") was issued November 9, 2015. In the Q3 2015 Form 10-Q, the Company reported net income of $193,008,000 and set forth its balance sheet, income statement and cash flow statement among other information. The Q3 2015 Form 10-Q also represented at p. 9 that:

The accompanying unaudited interim consolidated financial statements have been prepared in accordance with U.S. generally accepted accounting principles ("GAAP") for interim financial statements and with the instructions to Form 10Q and Article 10 of Regulation SX and, therefore, do not include all of the information and footnotes required by GAAP for complete financial statements. These interim statements should be read in conjunction with the financial statements and notes thereto included in the AmTrust Financial Services, Inc. ("AmTrust" or the "Company") Annual Report on Form 10K for the year ended December 31, 2014, previously filed with the Securities and Exchange Commission ("SEC") on March 2, 2015. The balance sheet at December 31, 2014 has been derived from the audited consolidated financial statements at that date but does not include all of the information and footnotes required by GAAP for complete financial statements.

These interim consolidated financial statements reflect all adjustments that are, in the opinion of management, necessary for a fair presentation of the results for the interim period and all such adjustments are of a normal recurring nature. The results of operations for the interim period are not necessarily indicative, if annualized, of those to be expected for the full year. The preparation of financial statements in conformity with GAAP requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. Actual results could differ from those estimates.

33. The Q3 2015 Form 10-Q also reported at p. 74:

Our management, with the participation and under the supervision of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a15(e) and 15d15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) as of the end of the period covered by this report. Based on such evaluation, our Chief Executive Officer and Chief

10

Financial Officer have concluded that, as of the end of such period, our disclosure controls and procedures are effective in ensuring that information required to be disclosed by us in the reports we file of submit under the Exchange Act is timely recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms, and accumulated and communicated to our management, including our principal executive officer and principal financial officer, as appropriate, to allow timely decisions regarding required disclosure.

During the most recent fiscal quarter, there have been no changes in our internal controls over financial reporting (as defined in Exchange Act Rule 13a15(f) and 15d15(f)) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

## B.    The Truth Is Revealed

34.    On February 27, 2017, AmTrust issued a press release, and filed it with the SEC on Form 8-K, entitled "AmTrust Financial Services, Inc. Reports Fourth Quarter 2016 Net Income Per Diluted Share of $0.57 and Operating Earnings Per Diluted Share[] of $0.38, Reflecting Strengthening of Reserves," disclosing, among other things, that the Company would not timely file its 2016 annual financial report, and providing:

> Update on Anticipated Timing of 10-K Filing On or before March 1, 2017, AmTrust intends to file a Form 12b-25 with the Securities and Exchange Commission providing the Company an automatic 15-day extension to file its Form 10-K for the year ended December 31, 2016.  As previously disclosed, the Company appointed a new independent registered public accounting firm on April 1, 2016. Additional time is needed for the Company to complete its consolidated financial statements and assessment of internal controls over financial reporting for the fiscal year ended December 31, 2016, and, as a consequence, for the Company's auditor, KPMG LLP, to complete its audit procedures and audit of the consolidated financial statements included in the Form 10-K. The Company expects to file the Annual Report on Form 10-K within the 15-day extension period provided by Rule 12b-25.

> In addition, the Company expects to make immaterial corrections to errors in its financial statements for fiscal years ended December 31, 2015 and 2014 and certain financial information for fiscal years ended December 31, 2013 and 2012 for inclusion in the Form 10-K and these processes have not been completed.  The Company is still evaluating corrections to

11

its historical quarterly financial statements within these fiscal years. For a further explanation, please see footnote (1) below.

In connection with the foregoing, the Company expects to disclose in the Form 10- K that, as part of its evaluation of its internal controls over financial reporting as required by Section 404 of the Sarbanes-Oxley Act of 2002, ***the Company identified material weaknesses in its internal control over financial reporting that existed as of December 31, 2016, specifically related to ineffective assessment of the risks associated with the financial reporting, and an insufficient complement of corporate accounting and corporate financial reporting resources within the organization***.  As the Company completes the preparation of its financial statements and the related audit process for fiscal year 2016, additional adjustments and/or material weaknesses could be identified. While the Company believes that significant progress has been made in enhancing internal controls as of December 31, 2016 and in the period since, the material weaknesses have not been fully remediated due to insufficient time to fully implement and assess the design and operating effectiveness of the related controls. The Company will continue the process to enhance internal controls throughout 2017.  [Emphasis added].

35.     In the notes to the financial statements in the press release, the Company further stated:

The Company identified and corrected errors during the three months ended December 31, 2016 related to prior periods in 2016 and 2015. These errors included accruing for bonuses paid (which also impacted prior periods), adjusting foreign currency transactions gain and loss and deferring a portion of warranty contract revenue associated with administration services previously recognized upfront, based on management's interpretation of accounting guidance related to multiple-element revenue recognition. ***In 2016, management reviewed this accounting treatment and concluded that its warranty contracts should <u>not</u> be accounted for using the multiple-element guidance, but instead deferred over the life of the contract.***  The Company assessed the materiality of these errors and determined that a one-time adjustment in 2016 would have been material to 2016 and, as a result, management elected to revise the 2015 and prior financial statements upon its conclusion that the impact of the errors was <u>not</u> material to the 2015 and prior period financial statements.  [Emphasis in original].

36.    The same day, AmTrust held an earnings call in which Zyskind and Pipoly discussed, among other things, the Company's fourth quarter financial results and the delay of its full year 2016 financial results, explaining in part:

> **Adam Klauber:**  Okay. So when KPMG signs the audit again hopefully in 15 days will there be any addendums, any weaknesses still would you expect that or do you expect it to be a normally signed audit at that point?
>
> **Ron Pipoly:**  I think at the end of the day we've disclosed that from an audit perspective, it's an integrated audit in which there is an audit of the financial statements conducted in accordance with Generally Accepted Auditing standards and GAAP. And then there is a second part of that which is the 404 opinion, which deals with the internal controls. So we've said that from an internal control perspective that we'll have a material weakness around financial reporting. But other than that we expect to move forward from an auditing of the financial statements.
>
> **Barry Zyskind:** So to answer it in other way the audit ***we're similarly expecting a clean audit opinion***, but when it comes to 404 there will be - when it comes to Sarbanes-Oxley there will be a material weakness in that. ***But that does not -- the audit is a clean audit means that the audit numbers are fine.***  [Emphasis added].

37.    On March 16, 2017, AmTrust issued a press release and filed it with the SEC on Form 8-K entitled "AmTrust Financial Services, Inc. Provides Update on 10-K Filing," further delaying its full year 2016 financial results and providing, in pertinent part:

> NEW YORK, March 16, 2017 (GLOBE NEWSWIRE) -- AmTrust Financial Services, Inc. (Nasdaq: AFSI) (the "Company" or "AmTrust") today stated that additional time is needed for the Company to complete its consolidated financial statements and assessment of internal controls over financial reporting for the fiscal year ended December 31, 2016, and, as a consequence, for the Company's auditor, KPMG LLP, to complete its audit procedures and audit of the consolidated financial statements included in the Form 10-K.  Accordingly, the Company will file its Form 10-K for the year ended December 31, 2016 as soon as practicable.
>
> In connection with the preparation and audit of the financial statements to be included in the Company's Form 10-K for the year ended December 31, 2016, the Audit Committee of the AmTrust Board of Directors, in consultation with management and its current and former independent auditors, concluded that ***the Company's previously issued consolidated***

13

*financial statements for 2014 and 2015 (including for each of the four quarters of 2015) as well as for the first three quarters of 2016 should be restated and should no longer be relied upon. In addition, the Company's earnings and press releases and similar communications, to the extent that they relate to the periods covered by these financial statements, as well as the Company's fourth quarter and fiscal 2016 earnings release dated February 27, 2017, should no longer be relied upon. Additionally, the reports of BDO USA LLP, the Company's former independent auditor, on the Company's consolidated financial statements for 2014 and 2015, including its opinions on the effectiveness of internal control over financial reporting for such periods, likewise should no longer be relied upon.*

\* \* \*

The 10-K delay and restatement largely relate to the timing of recognition of revenue, as previously announced, in the Company's service and fee business, . . .

\* \* \*

The Company is restating its financial statements and related disclosures primarily to correct two errors reported in its historical consolidated financial statements. These errors relate to: (1) upfront recognition of a portion of warranty contract revenue associated with administration services, based on the interpretation of ASC 605, Revenue Recognition, used in the previously filed financial statements related to multiple-element revenue recognition, instead of deferring recognition of the revenue over the life of the contract; and (2) bonuses that were expensed in the year paid but that should have been accrued in the year earned based on ASC 710, Compensation, and ASC 270, Interim Reporting. The first error will be reflected entirely within the results of operations for our Specialty Risk and Extended Warranty segment, while the second error will be reflected within the results of operations of all of our segments. The Company will also make other miscellaneous adjustments that had been previously identified but not corrected because they were not material, individually or in the aggregate, to its previously issued consolidated financial statements. In addition, the Company expects to have certain other noncash corrections related to deferred acquisitions costs and the capitalization of software development costs in 2016. [Emphasis added].

38.     Based on the Company's press release set forth above, the Company's financial reporting, including its net income for the periods involved were untrue and were not prepared according to GAAP rules as previously represented.  Further the Company admitted to material

weaknesses in its financial controls, in contrary to the representations to the contrary made in its quarterly and annual reports.

39.    The statements set forth in ¶¶ 25-33 were materially false and misleading when made.  The earnings write-downs for 2014 and 2015 were material and were not recaptured in 2016.

40.    On the March 2017 news, AmTrust's share price fell nearly 19% to close at $17.58 on March 17, 2017. AmTrust stock closed at $16.40 per share on April 27, 2017.

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class of all persons and entities who purchased or otherwise acquired AmTrust securities traceable to the Offering and suffered a loss.

42.    The members of the Class are so numerous that joinder of all members is impracticable.  In the Offering, 5,000,000 AmTrust common shares securities were sold.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.

43.    The class members are similarly situated and are a well-defined community of interest in the questions of law and fact involved in this action.  Questions of law and fact common to the members of the Class predominate over questions which may affect individual Class members.

44.    Common issues include:

(a)    Whether the Securities Act was violated by Defendants;

(b)    Whether the omissions and untruths in the Offering are material;

15

(c)     Whether the Class has been damaged; and

(d)     The proper measure of damages

45.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' conduct alleged herein.

46.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests that conflict with those of the Class.

47.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## STATUTE OF REPOSE

48.     Section 13 of the Securities Act provides:

> No action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(a)(1), unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale.

49.     This action has been filed within one year of the Plaintiff learning of the untrue statements (February 27, 2017) and within three years of the sale from the Offering.

16

## COUNT I

### (Against AmTrust for Violation of Section 11 of the Securities Act)

50.     Plaintiff realleges each and every allegation set forth above as if each was set forth in full here.

51.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against AmTrust.  The Registration Statement underlying the Offering was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.  Based on the Company's press releases commencing February 27, 2017, the financial statements contained in the Offering, or incorporated by reference therein, were materially untrue.  In addition, the statements made therein as to the adequacy of the Company's financial controls were materially untrue.  As a result, the Company violated Section 11 of the Securities Act.

52.     AmTrust is the registrant for the Offering.

53.     As issuer of the shares, AmTrust is strictly liable to Plaintiff and the Class for the misstatements and omissions.

54.     Plaintiff acquired AmTrust shares pursuant to the Offering Registration Statement.

55.     Plaintiff and the Class have sustained damages. The value of AmTrust common shares has declined substantially from the offering price.

56.     Accordingly, AmTrust is liable to Plaintiff and the Class for damages.

## COUNT II

### (Against the Individual Defendants as Signatories to the Registration Statement -- Violation of Section 11 of the Securities Act)

17

57.    Plaintiff realleges each and every allegation set forth above as if each was set forth in full here.

58.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Individual Defendants as signatories to the Registration Statement underlying the Offering which contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

59.    Based on the Company's press releases commencing February 27, 2017, the financial statements contained in the Offering, or incorporated by reference therein, were material untrue.  In addition, the statements made therein as to the adequacy of the Company's financial controls were materially untrue.

60.    As signatories to the Registration Statement, the Individual Defendants are strictly liable to Plaintiff and the Class for the untrue statements and omissions.

61.    Plaintiff acquired AmTrust shares pursuant to the Offering Registration Statement.

62.    Plaintiff and the Class have sustained damages.  The value of AmTrust common shares has declined substantially from the offering price.

63.    Accordingly, the Individual Defendants are liable to Plaintiff and the Class for damages.

## COUNT III

### (Against the Individual Defendants for
### Violations of Section 15 of the Securities Act)

64.    Plaintiff realleges each and every allegation set forth above as if each was set forth in full here.

65.     This Count is asserted against the Individual Defendants for violation of Section 15 of the Securities Act, 15 U.S.C. § 77o.

66.     The Individual Defendants, by virtue of their positions, stock ownership, and specific acts as described herein, had the power, and exercised the same, to control the representations and actions of AmTrust.

67.     As a result, each of the Individual Defendants is jointly and severally liable to Plaintiff and the members of the Class as a "control person" pursuant to Section 15 of the Securities Act.

68.     Plaintiff and the Class have been damaged as alleged herein.  As Control Persons, the Individual Defendants are liable for Plaintiff's and the Class's damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein;

B.     Awarding compensatory damages in favor of Plaintiff and the other class members against the Defendants in accordance with Sections 11and 15 for all compensable damages sustained as a result of the violations alleged herein, including pre-judgment and post-judgment interest thereon.

C.     Awarding Plaintiff and other members of the Class their costs and expenses in this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

D.     Awarding Plaintiff and the other Class members such other relief as this Court may deem just and proper.

19

Dated: April 28, 2017

Respectfully submitted,

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
    Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South
New York, NY  10016
Tel: (212) 983-1300
Fax: (212) 983-0380
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

**PASKOWITZ LAW FIRM P.C.**
Laurence D. Paskowitz
208 East 51st Street, Suite 380
New York, NY 10022
Tel: (212) 685-0969
Fax: (212) 685-2306
Email: lpaskowitz@pasklaw.com

**ROY JACOBS & ASSOCIATES**
Roy J. Jacobs
420 Lexington Avenue Suite 2440
New York, NY 10170
Tel: 212-867-1156
Fax: 212-504-8343
 Email: jacobs@jacobsclasslaw.com

*Attorneys for Plaintiff*

20

## CERTIFICATION OF SHARON ALBANO

1.    I, Sharon Albano, have reviewed the Complaint and have authorized the filing of same;

2.    I did not purchase the securities of AMTRUST FINANCIAL SERVICES INC. at the direction of plaintiff's counsel or in order to participate in any private action arising under this title of the federal securities laws;

3.    I am willing to serve as class representative and provide testimony at deposition and trial if necessary;

4.    During the Class Period, my transactions in securities of AMTRUST FINANCIAL SERVICES INC. consisted of the following:

| Date | Purchase(s) or Sales(s) | Amount | Price |
|------|-------------------------|--------|-------|
| 11/11/15 | Purchase | 400 shares | $25,600.00 |
| 3/9/17 | Sold | 800 shares | $17,208.00 |

5.    During the previous three years, I have not served or sought to serve as a representative party on behalf of a class in an action based upon the federal securities laws.

6.    I will not accept any payment for serving as a class representative beyond my pro rata share of any recovery, except as ordered or approved by the Court with respect to an award for reasonable costs and expenses (including lost wages).

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of April 2017, at MERRICK, New York.

SHARON ALBANO